1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10

11   ROBERT K. DENNIS,                      No.  2:21-CV-1906-DJC-DMC-P
12                     Petitioner,
13          v.                               <u>FINDINGS AND RECOMMENDATIONS</u>
14   D. SAMUL,
15                     Respondent.
16

17          Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of

18   habeas corpus under 28 U.S.C. § 2254.  Pending before the Court are Petitioner's petition for a

19   writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 20, and Petitioner's reply, ECF

20   No. 22.  Respondent has lodged relevant state court records, ECF No. 26.

21          Because this action was filed after April 26, 1996, the provisions of the

22   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.

23   <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct.</u> <u>(Beeler)</u>, 128

24   F.3d 1283, 1287 (9th Cir. 1997), <u>cert.</u> <u>denied,</u> 522 U.S. 1099 (1998).  Under AEDPA, federal

25   habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in

26   / / /

27   / / /

28   / / /

1  state court proceedings unless the state court's adjudication of the claim:

2        (1) resulted in a decision that was contrary to, or involved an unreasonable
3        application of, clearly established Federal law, as determined by the
      Supreme Court of the United States; or

4        (2) resulted in a decision that was based on an unreasonable determination
      of the facts in light of the evidence presented in the State court proceeding.
5

6  Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is

7  "contrary to" or represents an "unreasonable application of" clearly established law.  Under both

8  standards, "clearly established law" means those holdings of the United States Supreme Court as

9  of the time of the relevant state court decision.  See Carey v. Musladin, 549 U.S. 70, 74 (2006)

10  (citing Williams, 529 U.S. at 412).  "What matters are the holdings of the Supreme Court, not the

11  holdings of lower federal courts."  Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc).

12  For federal law to be clearly established, the Supreme Court must provide a "categorical answer"

13  to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a

14  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not

15  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice

16  created by state conduct at trial because the Court had never applied the test to spectators'

17  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's

18  holdings.  See Carey, 549 U.S. at 74.

19        In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a

20  majority of the Court), the United States Supreme Court explained these different standards.  A

21  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by

22  the Supreme Court on the same question of law, or if the state court decides the case differently

23  than the Supreme Court has on a set of materially indistinguishable facts.  See id. pg. 405.  A state

24  court decision is also "contrary to" established law if it applies a rule which contradicts the

25  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate

26  that Supreme Court precedent requires a contrary outcome because the state court applied the

27  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court

28  cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. pg.

1    406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine

2    first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6

3    (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal

4    habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the

5    error had a substantial and injurious effect on the verdict or was harmless.  See id.

6            State court decisions are reviewed under the far more deferential "unreasonable

7    application of" standard where it identifies the correct legal rule from Supreme Court cases, but

8    unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S.

9    510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested

10   that federal habeas relief may be available under this standard where the state court either

11   unreasonably extends a legal principle to a new context where it should not apply, or

12   unreasonably refuses to extend that principle to a new context where it should apply.  See

13   Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court

14   decision is not an "unreasonable application of" controlling law simply because it is an erroneous

15   or incorrect application of federal law.  See id. pg. 410; see also Lockyer v. Andrade, 538 U.S. 63,

16   75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even

17   where the federal habeas court concludes that the state court decision is clearly erroneous.  See

18   Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper

19   deference to state courts by conflating error (even clear error) with unreasonableness."  Id. pg. 75.

20   As with state court decisions which are "contrary to" established federal law, where a state court

21   decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless

22   unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

23           The "unreasonable application of" standard also applies where the state court

24   denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d

25   848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  Such decisions

26   are considered adjudications on the merits and are, therefore, entitled to deference under the

27   AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 223 F.3d at 982.

28   The federal habeas court assumes that state court applied the correct law and analyzes whether the

1  state court's summary denial was based on an objectively unreasonable application of that law.

2  See Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

3

4  # I. BACKGROUND

5  ### A.  **Facts**[1]

6      The following facts are recited by the California Court of Appeal in its opinion on

7  direct review affirming Petitioner's conviction and sentence, and Petitioner has not presented any

8  evidence to rebut the presumption that these facts are correct.  The Court of Appeal outlined the

9  facts of the case as follows:

10  ### A.  *Evidence relating to the charged offense*

11      On August 16, 2016, just before 6:00 p.m., the victim was working
    as a teller at a Wells Fargo bank in Roseville. Defendant, who was

12  wearing a white hat and a longsleeve shirt, was waiting in line like a
    customer, with an envelope in his hand. When defendant reached the front

13  of the line, he approached the victim's window, leaned on the counter with
    both arms, started cussing and demanding $50 and $100 bills. Although

14  defendant's voice was relatively quiet—just loud enough for the victim to
    hear—the victim testified that defendant had a "very aggressive" tone in

15  his voice and look on his face. The victim initially was startled and asked
    defendant if he was serious. Defendant responded, " 'Yes, this is fucking

16  serious. I want 50s and 100s on the fucking table.' " At that point, the
    victim understood that he was being robbed.

17      The victim became concerned for his safety and the safety of
    others in the bank. The victim did not know what defendant would do if he

18  refused to comply with defendant's demands. Based on his training, the
    victim knew his "best move" was to comply so that "no one would be

19  hurt." The victim grabbed a handful of money from his drawer (later
    determined to be about $5,000) and handed it to defendant. Defendant

20  took the money and walked out of the bank. As soon as defendant left, the
    victim pressed the alarm. The bank's surveillance camera recorded the

21  incident, and that recording was played for the jury.

22      Almost immediately after the incident, the victim spoke with the
    police and provided a description of the suspect. The victim subsequently

23  identified defendant in a photographic lineup and at trial.

24      At trial, the prosecution played portions of recorded conversations
    that defendant had with his mother while in jail. In one conversation,

25  defendant told his mother, "I'm going the route that there was no force or
    fear in the robbery." In another, defendant stated, "[H]e's gonna go talk to

---

26  [1]    Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made
    by a State court shall be presumed to be correct."  Findings of fact in the last reasoned state court

27  decision are entitled to a presumption of correctness, rebuttable only by clear and convincing
    evidence.  See Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012).  Petitioner bears the

28  burden of rebutting this presumption by clear and convincing evidence.  See id.  Petitioner is
    referred to as defendant in the state court's opinion.

the victim and uh, see . . . you know, make sure he wasn't scared. That he gave me the money because it was the uh policy of the bank and not because he was scared."

### B.   *Evidence relating to uncharged crimes*

Before trial, the People moved to admit evidence of uncharged crimes under Evidence Code section 1101, subdivision (b). In particular, the People sought to admit evidence of three other bank robberies involving defendant: one in Lafayette on August 23, 2016; another in Sacramento on August 27, 2016; and another in Napa on August 29, 2016. For each bank robbery, there was a surveillance video of the crime and a subsequent identification of defendant by the victim of the crime. The People sought to admit the surveillance videos, the photo identifications, and the victims' testimony describing the manner in which the crimes were committed. The People argued that the evidence was relevant to show identity, intent, absence of mistake or accident, motive, and common plan, and that the probative value of the evidence outweighed any prejudicial effects.

Defense counsel opposed the People's motion and sought to exclude any evidence of the uncharged crimes, arguing that the evidence would be cumulative and have little probative value because the defense was not contesting that defendant stole money from the bank or that he intended to steal money from the bank. According to the defense, the only issue in dispute was whether the theft was accomplished by means of force or fear. The defense argued that the uncharged crimes had no probative value on that issue, but would be highly prejudicial to defendant.

Over the objection of defense counsel, the trial court ruled that the People could introduce evidence of the other bank robberies under Evidence Code section 1101, subdivision (b) to prove identity, intent, absence of mistake or accident, motive, and common plan. The court noted the "high degree of similarity" between the charged offense and the uncharged bank robberies. The court also concluded that the probative value of the evidence outweighed its potential for undue prejudice.

At trial, the People produced the following evidence relating to the uncharged bank robberies.

### 1.   *August 23 robbery in Lafayette*

On August 23, 2016, Deanna V. was working as a teller at a U.S. Bank in Lafayette when a man wearing a black shirt and a hat approached her window and said he needed $50 or $100 bills. Deanna initially thought the suspect wanted to make a withdrawal, until the suspect became frustrated and told her with a stronger voice, "I'm robbing you." Deanna testified that she was in shock and scared for her safety so she began giving the suspect the money from her drawer, which consisted mostly of $20 bills. In response, defendant became more agitated and more threatening, telling her that he wanted $100 bills. Deanna handed defendant some $50 and $100 bills and some checks and told him that was all she had. She then took a step back from the window. After the suspect left, Deanna activated the alarm. The bank's surveillance camera recorded the incident, and the video was played for the jury.

/ / /

Lafayette police included a photograph of defendant in a photographic lineup shown to Deanna on August 31. At first, she was unable to identify the suspect. However, after police obtained a more recent photograph of defendant and used it in a second photographic lineup on September 15, Deanna identified defendant as the man who robbed her.

2.     *August 27 robbery in Sacramento*

On August 27, 2016, T.C. was working at a U.S. Bank branch inside of a Safeway store in Sacramento when a man wearing a blue shirt and a hat approached the window, leaned over the counter, and demanded money. T.C. testified that at first he did not know what was happening, so he asked the suspect what he was saying. In a threatening and aggressive tone, the suspect said, "Give me your money." T.C. felt scared and threatened so, in accordance with his training, he gave the suspect money. The bank's surveillance cameras recorded the incident, and the video was played for the jury. After the robbery, T.C. identified defendant in a photographic lineup.

3.     *August 29 robbery in Napa*

On August 29, 2016, Karen A. was working as a teller at a Wells Fargo bank in Napa when a man approached, leaned forward, handed her a piece of paper, and told her it was a robbery. The suspect demanded $50 and $100 bills. Karen testified that the suspect was quiet, but threatening, and appeared to be in a hurry. Karen was in shock and did not know what to do. The suspect seemed frustrated that she was moving too slowly and ripped off the pen attached to the window. Karen was scared that the suspect might hurt her, so she gave the suspect money from her drawer. The bank's surveillance cameras recorded the incident, and the video was played for the jury.

After the robbery, Karen was shown a photographic lineup. She identified a photograph of defendant as having exactly the same goatee and mustache color as the suspect. In court, she identified defendant as the person who robbed her.

C.     *The defense*

Defendant did not testify or present a defense case. In argument to the jury, the defense did not dispute that defendant was guilty of the lesser included crime of grand theft, but argued the prosecution had failed to prove the "force or fear" element of robbery. In support of his argument, defense counsel noted that defendant had entered the bank calmly, waited in the customer line, and quietly demanded money without showing any weapon or making any overt threats. Defense counsel argued that the victim, in surrendering the money to defendant, had simply followed his training and had not acted out of fear.

ECF No. 26-8.

/ / /

/ / /

1    **B.      Procedural History**

2           The Court of Appeal recited the following procedural history related to conviction

3    and sentencing:

4                 The jury found defendant guilty of second-degree robbery
            (Pen. Code, § 211; count one). In a bifurcated proceeding, defendant
5           admitted two prior serious felonies within the meaning of section
            667, subdivision (a)(1), and two strikes within the meaning of
6           sections 667, subdivisions (b) through (i) and 1170.12. Defendant
            also admitted that he served a prior prison term within the meaning
7           of section 667.5, subdivision (b).
                 The court denied a motion to remove a strike or prior serious
8           felony, and sentenced defendant to an indeterminate term of 25 years
            to life in prison on count one, plus a determinate sentence of 11
9           years for the enhancements (five years each for the two prior serious
            felonies plus one year for the prior prison term). The court ordered
10          that defendant's sentence run concurrent to a 20-year term imposed
            in a different proceeding.
11
            ECF No. 26-8, pg. 6 (unspecified statutory citations are to the
12          California Penal Code).

13          The California Court of Appeal affirmed Petitioner's conviction and sentence on

14   July 27, 2020, in <u>People v. Dennis</u>, case no. C088878 (unpublished).  <u>See</u> ECF No. 26-8.  The

15   California Supreme Court denied direct review on September 30, 2020, without comment or

16   citation.  <u>See</u> ECF No. 26-10.  Petitioner did not file any state court post-conviction actions.  The

17   instant federal petition was filed on August 13, 2021.  <u>See</u> ECF No. 1.

18

19                              **II. DISCUSSION**

20          In the habeas petition, Petitioner asserts five claims: (1) improper admission of his

21   uncharged robbery crimes as propensity evidence; (2) improper admission of hearsay; (3)

22   cumulative prejudice requires reversal; (4) ineffective counsel for failure to object on the grounds

23   of hearsay; and (5) fees and fines should be reduced or stayed due to the inability to pay.  <u>See</u>

24   ECF No. 1, pgs. 5-6.

25          In the answer, Respondent argues that Petitioner is not entitled to federal habeas

26   relief on any of his claims.  <u>See</u> ECF No. 20.  Specifically, Respondent contends: (1) there is no

27   clearly established law regarding Petitioner's propensity evidence claim; (2) Petitioner's claim

28   regarding improper admission of hearsay evidence is procedurally barred; (3) the state court did

1  not unreasonably reject Petitioner's derivative claim of ineffective assistance of counsel regarding

2  failure to object to the improper admission of hearsay evidence; (4) the state court did not

3  unreasonably reject Petitioner's cumulative error claim; and (5) Petitioner's sentencing claim is

4  not cognizable.  See id. at 2 (table of contents).

5          **A.**      **Propensity Evidence**

6          Petitioner claims that the trial court improperly admitted evidence of other bank

7  robberies, which created unfair prejudice.  See ECF No. 1, pg.  27 (petition); see also ECF No.

8  22, pg. 3 (traverse).  Specifically, Petitioner asserts that the admission of the uncharged robberies

9  improperly demonstrated propensity because the sole contested issue was the "fear" element of

10  robbery against Mr. Gutierrez.  See ECF No. 1, pg. 27.

11          In rejecting this claim, the California Court of Appeal began its discussion with a

12  summary of the applicable state law, continued with a detailed and lengthy analysis based on state

13  law, and concluded as follows:

14          Although there was potential prejudice, increased somewhat
   because the jury did not know whether the uncharged crimes resulted in

15  convictions (*People v. Tran*, *supra*, 51 Cal.4th at p. 1047), we do not find
   the evidence to be significantly more inflammatory than the testimony

16  concerning the charged offense.  Moreover, any risk that the jury would
   misuse the evidence for an improper character purpose was addressed by

17  the court's instructions, which conveyed to the jury that the evidence
   could not be considered to prove defendant's bad character or criminal

18  disposition.  (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1023; see also
   *Foster*, *supra*, 50 Cal.4th at pp. 1336-1337 [it is presumed that the jury

19  understood and followed the court's instructions].)  Under the totality of
   the circumstances, we conclude the trial court did not abuse its discretion

20  in finding that the evidence was admissible to prove a common plan
   because its probative value outweighed its potential for undue prejudice.

21  (*See Leon*, *supra*, 61 Cal.4th at p. 599.)

22  ECF No. 26-8, pgs. 7-13.

23          Respondent argues that this Court may not disturb the state court's ruling on a

24  state law claim which was based on state law.  See ECF No. 20, pg. 16.  Respondent also argues

25  that, to the extent Petitioner claims the state law error resulted in a violation of his due process

26  rights, the claim still fails.  See id.  For the reasons discussed below, the Court agrees.

27  / / /

28  / / /

8

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  "Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal law,' as laid out by the Supreme Court."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see also Walden v. Shinn, 990 F.3d 1183, 1204 (9th Cir. 2021); Nava v. Diaz, 816 F. App'x 192, 193 (9th Cir. 2020).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994).   To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).   In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict.  See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

/ / /

1    Here, there is no clearly established Supreme Court precedent supporting

2  Petitioner's propensity evidence, which is based on state evidentiary law, and which the state

3  court resolved based on application of state law.  As to whether Petitioner's claim gives rise to a

4  violation of Petitioner's federal due process rights, Respondent contends:

5              To the extent Petitioner argues admission of the evidence violated
             due process, his claim also cannot succeed. The Supreme Court has
6            expressly reserved consideration of whether the admission of propensity
             evidence may violate due process. *Alberni v. McDaniel*, 458 F.3d 860,
7            863-64 (9th Cir. 2006). Indeed, the Supreme Court has stated "we express
             no opinion on whether a state law would violate the Due Process Clause if
8            it permitted the use of 'prior crimes' evidence to show propensity to
             commit a charged crime." *Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991).
9
             ECF No. 20, pg. 16.
10

11   The Court agrees.  As stated above, this Court may only grant relief if it is based

12 on clearly established law as announced by the Supreme Court.  The Supreme Court has clearly

13 stated that it expresses no opinion with respect to a state court's admission of propensity

14 evidence.  See Estelle, 502 U.S. at 75, n.5.  Therefore, there is no basis for federal habeas relief

15 on Petitioner's propensity evidence claim even if this Court were to agree with Petitioner that the

16 trial court clearly erred.

17   **B.**     **Hearsay**

18   Petitioner claims that when the prosecutor asked Officer Patton what Mr. Gutierrez

19 told him, his trial counsel objected on the basis of "[i]mproper impeachment."  ECF No. 1, pg. 65.

20 The trial court overruled the objection because "there was no specific hearsay objection" or

21 improper impeachment.  Id.  Petitioner emphasizes that the sole contested issue was Mr.

22 Gutierrez's testimony of fear, which was improperly admitted as hearsay evidence.  See id. at 65-

23 66.  Respondent argues in the answer that the state court found the claim forfeited because trial

24 counsel failed to preserve a hearsay objection and that, as a result, the claim is procedurally

25 barred on federal habeas review.  See ECF No. 20, pg. 18.

26 / / /

27 / / /

28 / / /

10

1    On direct appeal, the California Court of Appeal rejected this claim, stating:

2          At trial, the victim testified that immediately after the robbery he
3    spoke with a police officer and described what happened, but the victim
     was not asked whether he told the officer he was afraid during the robbery.
4    Later, the prosecution called the officer who spoke to the victim at the
     crime scene, and asked the officer if the victim told him how he felt during
5    the crime. Defense counsel objected to the question as "improper
     impeachment," which the court overruled. The officer then testified that
6    the victim had said "he was nervous and afraid that [the suspect] had a
     weapon."
7          On appeal, defendant argues the trial court erred by admitting the
     victim's hearsay statement to the police. The People assert that defendant
8    forfeited the claim by failing to raise a hearsay objection below. [FN 4]
     We agree with the People.

9          [FN 4] During a later break in the trial, defense counsel
10   expanded on his argument that the evidence should have been
     excluded as "improper impeachment." Defense counsel argued
11   that because the victim was not asked on direct examination
     whether he told the officer that he was nervous and afraid,
12   asking the officer to supply that information was "improper
     impeachment. It would be hearsay evidence, and I think that it
13   was not properly brought out in front of this jury." In response,
     the prosecutor argued the statement was admissible as a prior
14   consistent statement because defense counsel would argue that
     the victim was not actually afraid. The court explained that it
15   "ruled on the objection as it was heard," and that there "was no
     specific hearsay objection, just an objection based on improper
16   impeachment. . . ." We find no error. Although defendant's
     subsequent reference to hearsay could be construed as a
17   hearsay objection, it came too late. (*People v. Partida* (2005)
     37 Cal.4th 428, 433-434 [evidentiary objections must be
18   specific and timely]; *People v. Perry* (1972) 7 Cal.3d 756, 781
     [subsequent motion to strike not sufficient].)

19         Pursuant to Evidence Code § 353, a judgement will not be reversed
20   due to the erroneous admission of evidence unless the record contains a
     timely and specific objection to the evidence on the ground sought to be
21   urged on appeal.  (Evid. Code, § 353; *People v. Ortiz* (1969) 276 Cal.
     App.2d 1, 6.)  We conclude that an objection of "improper impeachment,"
22   which relates to the credibility of a witness, is not sufficient to preserve a
     claim of hearsay for purposes of appeal.  (*See* Evid. Code, § 353; *People v.
23   Price* (1991) 1 Cal.4th 324, 429-430, superseded by statute on other
     grounds as stated in *People v. Hinks* (1997) 58 Cal.App. 1157, 1161;
24   *People v. Wheeler* (1992) 4 Cal.4th 284, 300, superseded by state on other
     grounds as stated in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1460.).
25   Thus, defendant forfeited his hearsay claim by failing to raise the
     objection below.

26         ECF No. 26-8, pgs. 13-14.

27   ///

28   ///

                                      11

1    Based on the state court's holding that Petitioner forfeited any hearsay claim,

2    Respondent argues that the claim is procedurally barred on federal habeas review.  Though

3    procedural issues, such as procedural bar, are often addressed before the merits, they need not be.

4    The Supreme Court in Lambrix v. Singletary, 520 U.S. 518 (1997), skipped over the procedural

5    bar argument and proceeded to the merits.  See id. at 525; see also Franklin v. Johnson, 290 F.3d

6    1223, 1232 (9th Cir. 2002) (stating that courts may "reach the merits of habeas petitions if they

7    are, on their face and without regard to any facts that could be developed below, clearly not

8    meritorious despite an asserted procedural bar").  "Procedural bar issues are not infrequently

9    more complex than the merits issues" and "it may well make sense in some instances to proceed

10    to the merits if the result will be the same."  Franklin, 290 F.3d at 1232; see, e.g., Dean v. Schriro,

11    371 F. App'x 751 (9th Cir. 2010).  As discussed below, the Court finds that Petitioner's hearsay

12    claim can be resolved on the merits and, therefore, the Court declines to address whether the

13    claim is procedurally barred by the default in state court.

14    The Confrontation Clause protects a defendant from unreliable hearsay evidence

15    being presented against him during trial.  See U.S. Constitution, Amendment VI.  Prior to the

16    Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the admission of

17    hearsay evidence did not violate the Confrontation Clause where the hearsay fell within a firmly

18    rooted exception to the hearsay rule or otherwise contained "particularized guarantees of

19    trustworthiness."  Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Ohio v. Roberts, 448 U.S. 56,

20    66 (1980).  In Crawford, however, the Supreme Court announced a new rule:  Out-of-court

21    statements by witnesses not appearing at trial that are testimonial are barred under the

22    Confrontation Clause unless the witnesses are unavailable and the defendant had a chance to

23    cross-examine, regardless of whether such statements are deemed reliable by the trial court.  See

24    541 U.S. at 51.  If error occurred, the next question is whether such error was harmless.

25    See Bockting v. Bayer, 399 F.3d 1010, 1022 (9th Cir. 2005) (applying harmless error analysis).  /

26    / /

27    / / /

28    / / /

1    While the Supreme Court in <u>Crawford</u> "le[ft] for another day any effort to spell out

2    a comprehensive definition of 'testimonial,'" the Court provided some guidance. 541 U.S. at 68.

3    The Court observed that "[a]n accuser who makes a formal statement to government officers

4    bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

5    <u>Id.</u> at 51; <u>see also</u> <u>Davis v. Washington</u>, 547 U.S. 813 (2006) (holding that law enforcement

6    interrogations directed at establishing the facts of a past crime or in order to identify the

7    perpetrator are testimonial).

8    Presuming that trial counsel had properly objected, the California Court of Appeal

9    addressed the merits of Petitioner's hearsay claim and determined that any error was non-

10   prejudicial.  The state court held:

11   . . .Although defendant characterizes the victim's out-of-court
     statement as a "key piece of evidence," we do not. Regardless of whether
12   the victim was afraid defendant had a weapon, the victim was concerned
     for his safety and the safety of others in the bank. The victim testified that
13   he perceived defendant as "[v]ery aggressive," and complied with
     defendant's demands because he knew defendant was serious and believed
14   compliance was the best option to ensure "no one would be hurt." This by
     itself was strong evidence that defendant was guilty of robbery.
15   (*Morehead, supra*, 191 Cal.App.4th at p. 775; *People v. Bordelon, supra*,
     162 Cal.App.4th at p. 1319.) The jury also could consider defendant's
16   uncharged crimes as circumstantial evidence that defendant used fear to
     rob the bank pursuant to a common plan to use fear to rob banks. It is not
17   reasonably probable the jury would have reached a different result had the
     out-of-court statement been excluded.
18
     ECF No. 26-8, pgs. 14-15.
19

20   Assuming for purposes of analysis, as the state court did, that the trial court erred

21   in admitting hearsay evidence, the issue is whether the error was harmless.  See <u>Bockting</u>, 399

22   F.3d at 1022.  Constitutional errors fall into one of two categories: trial errors or structural errors.

23   See <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 629 (1993).  Structural errors relate to trial mechanism

24   and infect the entire trial process.  See <u>id.</u> at 309-10.  Denial of the right to counsel is an example

25   of a structural error.  See <u>Brecht</u>, 507 U.S. at 629-30 (citing <u>Gideon v. Wainwright</u>, 372 U.S. 335

26   (1963)).  Structural errors to which the harmless error analysis does not apply are the Aexception

27   and not the rule@  <u>Rose v. Clark</u>, 478 U.S. 570, 578 (1986).

28   / / /

Trial error occur[s] during the presentation of the case to the jury and may be quantitatively assessed in the context of other evidence presented in order to determine its effect on the trial.  Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991).  Improperly impeaching a defendant based on his silence after receiving Miranda warnings is an example of a trial error.  See Brecht, 507 U.S. 629 (citing Doyle v. Ohio, 426 U.S. 610 (1976)).   Trial errors may be considered harmless.  See Hedgpeth v. Pulido, 129 S.Ct. 530, 532 (2008) (per curiam) (citing Chapman v. California, 386 U.S. 18 (1967)).

In Chapman, a case before the Supreme Court on direct review, the Court held that "before a [non-structural] constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt".  386 U.S. at 24.  A different harmless error standard applies to cases on collateral review.  In Brecht, the Court stated that applying the Chapman standard on collateral review "undermines the States' interest in finality and infringes upon their sovereignty over criminal matters."  507 U.S. at 637.  In habeas cases, the standard applied in Kotteakos v. United States, 328 U.S. 750 (1946), governs harmless error analysis for non-structural constitutional errors.  See Brecht, 507 U.S. at 637.  Under this standard, relief is available where non-structural error occurs only where such error "had a substantial and injurious effect or influence in determining the jury's verdict."  Kotteakos, 328 U.S. at 776.

Here, the state court determined that there was no reasonable probability that the admission of hearsay evidence infected the jury's conclusion because there was ample other evidence from which the jury could have reached its verdict.  The Court finds that this was a reasonable application of the Kotteakos standard governing this case, which is proceeding on a petition for a writ of habeas corpus and not on direct review.  As the state court outlined in the decision on direct appeal, the jury had before it evidence other than the hearsay statements from the victim upon which to base its verdict.  Because any error related to admission of hearsay did not have a substantial and injurious effect on the jury's verdict, the error was harmless.

/ / /

/ / /

14

1

    **C.**      <u>Ineffective Assistance of Counsel</u>

2

        Derivative of his claim regarding admission of hearsay evidence, Petitioner

3 contends his trial counsel rendered ineffective assistance by failing to properly object.  <u>See</u> ECF

4 No. 1, pg. 72.  Respondent argues that the state determination that no prejudice resulted from

5 counsel's lack of a proper hearsay objection was not unreasonable.  ECF No. 20, pg. 19.  The

6 Court agrees. In addressing this claim, the California Court of Appeal applied the clearly

7 established <u>Strickland</u> standard and reasonably concluded, consistent with its analysis of

8 Petitioner's hearsay claim on the merits, that no prejudice resulted from counsel's failure to

9 interpose a proper hearsay objection.  <u>See</u> ECF No. 26-8, pgs. 14-15.

10

        The Sixth Amendment guarantees the effective assistance of counsel.  The United

11 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

12 <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all

13 the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>See</u>

14 <u>id.</u> at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have

15 been the result of reasonable professional judgment.  <u>See id.</u> at 690.  The federal court must then

16 determine whether, in light of all the circumstances, the identified acts or omissions were outside

17 the wide range of professional competent assistance.  <u>See id.</u>   In making this determination,

18 however, there is a strong presumption "that counsel's conduct was within the wide range of

19 reasonable assistance, and that he exercised acceptable professional judgment in all significant

20 decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S.

21 at 689).

22

        Second, a petitioner must affirmatively prove prejudice.  <u>See</u> <u>Strickland</u>, 466 U.S.

23 at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

24 unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A

25 reasonable probability is "a probability sufficient to undermine confidence in the outcome."  <u>Id.</u>;

26 <u>see also</u> <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not

27 determine whether counsel's performance was deficient before examining the prejudice suffered

28 by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an

1  ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be

2  followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting <u>Strickland</u>, 466 U.S. at

3  697).

4          Here, applying <u>Strickland</u>, the state court concluded that Petitioner cannot

5  establish prejudice resulting from admission of the victim's out-of-court statement regarding fear

6  because there was other evidence supporting the jury's finding.  Because this decision was not

7  unreasonable, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of

8  counsel.

9          **D.    <u>Cumulative Error</u>**

10          Petitioner claims that the combined prejudice from improper admission of his

11  uncharged crimes and hearsay evidence resulted in an unfair trial.  <u>See</u> ECF No. 1, pg. 78.

12  Respondent argues that Petitioner has not shown that the rejection of his cumulative error claim

13  violated any right clearly established by the Supreme Court.  <u>See</u> ECF No. 20, pg. 20.

14          The Ninth Circuit has concluded that under clearly established United States

15  Supreme Court precedent the combined effect of multiple trial errors may give rise to a due

16  process violation if it renders a trial fundamentally unfair, even where each error considered

17  individually would not require reversal.  <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th. Cir. 2007)

18  (citing <u>Donnelly</u>, 416 U.S. at 643, and <u>Chambers v. Mississippi</u>, 410 U.S. 284, 290 (1973)).

19  "[T]he fundamental question in determining whether the combined effect of trial errors violated a

20  defendant's due process rights is whether the errors rendered the criminal defense 'far less

21  persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's

22  verdict." <u>Parle</u>, 505 F.3d at 928 (internal citations omitted); <u>see also</u> <u>Hein v. Sullivan</u>, 601 F.3d

23  897, 916 (9th Cir. 2010) (same).

24          Here, Petitioner has asserted three errors – improper admission of propensity

25  evidence, improper admission of hearsay, and ineffective assistance of counsel for failing to

26  object to hearsay.  As discussed above, Petitioner's propensity evidence claim is unsupported by

27  any clearly established Supreme Court precedent and, for this reason, the claim is meritless.

28  Petition's hearsay claim is also meritless because any error was harmless.  Similarly, Petitioner's

16

1    ineffective assistance of counsel claim is meritless due to lack of prejudice.  Both of Petitioner's

2    claims related to hearsay turned on whether there was a substantial and injurious effect the jury.

3    The same standard applies to a claim of cumulative error and, for the same reasons as discussed

4    by both the state court and this Court above, the Court finds that there was no substantial and

5    injurious effect on the jury resulting from any accumulation of harmless errors.

6        **E.    <u>Sentencing Claim</u>**

7            Petitioner requests that the discretionary fees imposed by the trial court be

8    stricken.  <u>See</u> ECF No. 1, pg. 80.  Petitioner also asks that the restitution fine be reduced to the

9    statutory minimum.  <u>See</u> <u>id.</u>  Finally, Petitioner requests that the mandatory fines and fees be

10   stayed. <u>See</u> <u>id.</u>   In support, Petitioner states that, even considering wages earned while in prison,

11   it is unlikely that he will have the ability to pay over $11,000 in fees and fines.  <u>See</u> <u>id.</u> at 79.  In

12   the answer, Respondent notes that the California Court of Appeal remanded the matter for

13   correction of certain fees and found Petitioner's remaining complaints improperly raised or

14   meritless.  <u>See</u> ECF No. 20, pg. 21.

15           Petitioner's claim is not cognizable and should be denied.  <u>See</u> <u>Phillips v.</u>

16   <u>Cisneros</u>, 2021 WL 4497884, at *12 (C.D. Cal. Aug. 3, 2021) (regarding restitution-fine claim on

17   habeas, "the Court has no authority to review Petitioner's claim challenging his financial liability

18   for his crimes of conviction").

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


Dated:  April 10, 2024

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE